**In the Matter of Leonidas MEDINA and Southside Professional Services.**

No. 11–202–M.P.

Supreme Court of Rhode Island.

July 7, 2011.

Richard P. D'Addario.

John B. Harwood.

### ORDER

This matter came before the Court pursuant to Rule 9(d) of the Rules of Procedure of the Unauthorized Practice of Law Committee (hereinafter "Committee") following investigational hearings conducted by the Committee on October 20, 2010, November 23, 2010, December 7, 2010, December 16, 2010 and February 2, 2011 in connection with Leonidas Medina and his business known as "Southside Professional Services." The Committee's investigation of Mr. Medina and Southside Professional Services was in response to four (4) separate complaints filed with the Committee as well as a referral submitted pursuant to an Order issued by Family Court Magistrate John J. O'Brien, Jr.[1]

After the investigational hearings, the Committee made findings of fact which are identified in its Committee Report, submitted to this Court on May 12, 2011, a copy of which is appended hereto. The Committee determined by a preponderance of the evidence before it that Mr. Medina and/or Southside Professional Services had violated the statutes governing the unauthorized practice of law by holding himself/itself out as authorized to practice law, by profiting from the services performed by attorneys, by soliciting business and acting as an agent for attorneys and by agreeing to furnish legal services which neither Mr. Medina nor Southside Professional Services are qualified to provide.

In addition to the foregoing determinations, the Committee expressed its concern relative to Attorney Thomas DeSimone who appears to have a business relationship with Mr. Medina relative to Attorney DeSimone's law practice. The Committee reported that:

> Attorney DeSimone was served with a subpoena by the Committee to produce certain documents relative to payments made by him to Mr. Medina. See, February 2, 2011 Transcript, Exhibit 17 attached thereto. Attorney DeSimone refused to produce said documents and stated that he did not intend to comply with the subpoena because in his opinion, the documents requested were not relevant to the proceedings before the Committee and were not public documents. See February 2, 2011 Tr. at pp. 4–5. Although the Committee is not tasked with investigating the conduct of Attorney DeSimone and makes no findings with respect to Attorney DeSimone's conduct, the Committee was troubled by Attorney DeSimone's lack of candor towards the Committee as well as the business arrangement which exists between him and Mr. Medina. The Committee respectfully suggests that the Court may wish to refer the transcripts of this matter to Disciplinary Counsel for review in consideration of possible disciplinary action against Attorney DeSimone.

Committee Report at n. 6.

After reviewing the Committee Report, hearing transcripts and exhibits this Court hereby orders the following:

---

1. Copies of the complaints submitted to the Committee, as well as the hearing transcripts and exhibits are available for inspection in the Supreme Court Clerk's Office.

A. That the Committee's findings of fact be hereby adopted.

B. That the Committee Report, hearing transcripts and all exhibits be referred to the Department of Attorney General for civil and/or criminal prosecution of Leonidas Medina and/or Southside Professional Services.

C. That the Committee Report, hearing transcripts and all exhibits be referred to Disciplinary Counsel for review in consideration of possible disciplinary action against Attorney Thomas DeSimone.

## Appendix

### Rhode Island Supreme Court Unauthorized Practice of Law Committee

In Re: Leo Medina & Southside Professional Services

### Committee Report

Pursuant to Rule 8(b) of the Rules of the Unauthorized Practice of Law Committee (UPLC or Committee), this report is being furnished to the Supreme Court for its consideration as a result of an investigational hearing undertaken by the Committee on October 14, 2010,[1] October 20, 2010, November 17, 2010,[2] November 23, 2010, December 7, 2010, December 16, 2010 and February 2, 2011 in the above-captioned matter. In accordance with the Rule 7(d) of the Rules of Procedure of the Unauthorized Practice of Law Committee, a majority of the Committee members who were present during the investigational hearings have found that the charges in the complaint against the respondents, Leo

Medina and Southside Professional Services have been sustained by a preponderance of the evidence presented.

## I. Procedural History

### A. Complaints Received by the Committee against Leo Medina and Southside Professional Services

The genesis of this case lies in four (4) separate complaints filed with the Committee as well as a referral submitted pursuant to an Order issued by Family Court Magistrate John J. O'Brien, Jr.

### 1. Disciplinary Complaint

The first complaint, dated May 13, 2010, was submitted by Chief Disciplinary Counsel David D. Curtin and is attached hereto as Exhibit A ("Disciplinary Complaint"). The Disciplinary Complaint was accompanied by a memorandum from Investigator Joseph F. Parenteau and a photocopy of an advertisement from the April 2010 edition of the Directorio Hispano (Hispanic Yellow Pages).

The Disciplinary Complaint focuses on the advertisement for Southside Professional Services which appeared in the Hispanic Yellow Pages. Disciplinary Counsel posits that Southside Professional Services "appears to offer a number of services that come close to, if they do not violate, the unauthorized practice of law."

### 2. Smith Complaint

The second complaint received by the Committee from Attorney Mark L. Smith on or about July 21, 2010 was also in reference to the advertisement in the His-

---

1. The Committee was unable to proceed with the hearing on this date because the requisite number of Committee members were not present to establish a quorum for the investigational hearing pursuant to Rule 7(c)(11) of the Rules of Procedure.

2. The Committee was unable to proceed with the hearing on this date due to the unavailability of certain witnesses called to testify.

panic Yellow Pages for Southside Professional Services and Leo Medina. ("Smith Complaint," attached hereto as Exhibit B). Mr. Smith's letter provided a translation of the ad as follows:

> "We rely on the assistance of four lawyers that offer the services of immigration, criminal defense, family court, evictions, divorces, workers' compensation, homeowners insurance, auto insurance, SR–22, translations, loan medications, notary public and auto registrations."

The Smith Complaint alleges that this advertisement violates RIGL §§ 11–27–6 (Compensation of Unqualified Persons for Legal Services Prohibited); 11–27–8 (Solicitation of Business by Agents Prohibited); and 11–27–10 (Agreement or Offer to Furnish Legal Services).

### 3. *Estrada Complaint*

Approximately one week after receiving the Smith Complaint, the Committee received yet another complaint against Leo Medina and Southside Professional Services, this one from Mr. Luis M. Estrada, Jr. who, at the time of the filing of the complaint, was the Office Manager for Taveras Law Offices, PC ("Estrada Complaint"). Mr. Estrada's complaint, a copy of which is attached hereto as Exhibit C, was accompanied by several items as follows:

a. Leo Medina's Southside Professional Service business card which identifies him as a "Legal Administrator/Translator;"

b. The Articles of Organization for Southside Professional Services, LLC;

c. a black and white photograph of the exterior of the building from which Southside Professional Services operates its business at 529 Broad Street in Providence. The photograph depicts a picture of the Southside Professional Services sign immediately adjacent to a sign advertising "Immigration Law Offices;"

d. an original issue of the Directorio Hispano which contains the color version of the advertisement that was submitted to the Committee with the Curtin Complaint.[3]

The central tenet of Mr. Estrada's complaint was that Mr. Medina actively held himself out as an attorney to other people in the community. Mr. Estrada's complaint also took issue with the advertisement published in the Hispanic Yellow Pages for Southside Professional Services.

### 4. *Magistrate O'Brien Referral*

On or about September 22, 2010, the Committee received a referral from Family Court Magistrate John J. O'Brien, Jr. in regard to Mr. Medina. ("Magistrate O'Brien Referral," attached hereto as Exhibit D [4]). Magistrate O'Brien entered an order on September 22, 2010 directing that copies of transcripts from two separate hearing dates be transmitted to the Committee for its consideration. The hearings were in connection with a divorce case then-pending before Magistrate O'Brien (*Hernandez v. Hernandez*, P2009–2808).

---

3. The original copy of the Hispanic Yellow Pages submitted with the Estrada Complaint will be retained in the Clerk's Office for reference and is not provided herewith.

4. The following documents comprise Magistrate O'Brien's Referral:
   1. Order dated September 22, 2010;
   2. Transcript dated July 29, 2010 in the matter of Hernandez v. Hernandez (F.C. No. P2009–2808);
   3. Transcript dated September 8, 2010 in the matter of Hernandez v. Hernandez (F.C. No. P2009–2808);
   4. Addendum, signed by Magistrate O'Brien and dated September 9, 2010.

The first hearing occurred on July 29, 2010 in regard to defendant's motion to compel interrogatory answers and document responses from the plaintiff, Mr. Hernandez. Magistrate O'Brien became concerned about Mr. Medina's involvement with the Hernandez divorce case based on statements made by Mr. Hernandez during the hearing. Although Mr. Hernandez was not represented by counsel at the July 29th hearing, Mr. Hernandez indicated that Mr. Medina was in possession of certain discovery documents which needed to be turned over to opposing counsel. Furthermore, Mr. Hernandez informed the Court that he had paid Mr. Medina for what appeared to be law-related services. Based on Mr. Hernandez' statements, Magistrate O'Brien asserted that Mr. Medina "appears to be practicing law without a license." July 29, 2010 Tr. at p. 7. Magistrate O'Brien set the matter down for a future hearing and directed that Mr. Medina be subpoenaed to appear.

The second hearing took place on September 8, 2010. On that date, Mr. Medina appeared before Magistrate O'Brien with counsel, Thomas DeSimone.[5] Before Mr. Medina was called to testify, Mr. Hernandez took the stand and testified that he had paid Mr. Medina nine-hundred dollars ($900) in connection with his divorce case. September 8, 2010 Tr. at pp. 8–10. Mr. Hernandez' testimony reiterated his previous statements to the Court that he had provided discovery materials to Mr. Medina. Id. When Mr. Medina was called upon to testify, Attorney DeSimone instructed Mr. Medina to invoke his Fifth Amendment rights, at which point Magistrate O'Brien concluded the hearing and ordered that the matter be turned over to the Rhode Island Department of Attorney General and to the Unauthorized Practice of Law Committee. September 8, 2010 Tr. at pp. 13–4.

### 5. Correa Complaint

The fifth and final complaint considered by the Committee was submitted on or about October 13, 2010 by Sara D. Correa. A copy of Ms. Correa's letter and payment receipt is attached hereto as Exhibit E (the "Correa Complaint"). Ms. Correa's letter to the Committee reports that she consulted with Mr. Medina at the Southside Professional Services office on Broad Street in regard to getting a divorce. Ms. Correa recounts that Mr. Medina quoted her a price and payment option for acquiring a divorce and he accepted payment from her in the amount of three-hundred twenty-five dollars ($325), as reflected in the receipt she submitted with her complaint. Ms. Correa indicated that she thought Mr. Medina was an attorney when she hired him to assist her in procuring a divorce.

### B. Investigational Hearings

In connection with its investigation of Mr. Medina and Southside Professional Services, the Committee heard testimony on the following dates from the following witnesses:

| | |
|---|---|
| October 20, 2010 | Luis Estrada (Transcript and Exhibits attached hereto as Exhibit F) |
| November 23, 2010 | Alciabiades Hernandez (Transcript and Exhibits attached hereto as Exhibit G) |
| December 7, 2010 | Leonidas Medina (Transcript and Exhibits attached hereto as Exhibit H) |
| December 16, 2010 | Leonidas Medina Sara D. Correa (Transcript and Exhibits attached hereto as Exhibit I) |
| February 2, 2011 | Thomas DeSimone, Esq. (Transcript and Exhibits attached hereto as Exhibit J) |

---

**5.** Notably, Mr. DeSimone had previously represented Mr. Hernandez in his divorce case, but had withdrawn his appearance on June 15, 2010.

## II. *Findings of Fact*

The Committee hereby makes the following findings of fact:

1. Mr. Medina is not an attorney. December 7, 2010 Tr. at p. 5.

2. Prior to organizing Southside Professional Services, Mr. Medina worked for Attorney Thomas DeSimone as a Spanish interpreter and paralegal. February 2, 2011 Tr. at pp. 16–8,52.

3. Mr. Medina is fluent in Spanish. December 7, 2010 Tr. at pp. 7–8.

4. In or around January/February 2010 Mr. Medina organized Southside Professional Services. December 7, 2010 Tr. at p. 16.

5. Prior to organizing Southside Professional Services, Mr. Medina had intended for his business to be called "Medina and Associates." December 7, 2010 Tr. at pp. 16–21.

6. Attorney DeSimone advised Mr. Medina not to operate under the name of "Medina and Associates." December 7, 2010 Tr. at p. 17.

7. The Yellow Pages contain a listing for "Medina and Associates" under the Lawyers section of that publication. December 7, 2010 Tr. at pp. 16–21 and Respondent's Exhibit C (attached to December 7, 2010 Transcript).

8. Despite Mr. Medina's assertions that the Medina and Associates Yellow Pages publication was made in error and that he attempted to address said error, "Medina and Associates" appears under the Lawyers section of the most recent (2011–2012) edition of the Yellow Book. See Letter dated February 24, 2011 from Chairman Richard P. D'Addario to Attorney John Harwood (with attachment) and response letter from Attorney Harwood, dated February 28, 2011, attached hereto as Exhibit K.

9. Mr. Medina failed to adequately explain why Medina and Associates was listed under the Lawyers section of the Yellow Pages. December 7, 2010 Tr. at pp. 16–21.

10. Mr. Medina considers his job to be assisting lawyers and helping people "see who they need to see." December 7, 2010 Tr. at pp. 6–7, 15–6, 26–7, 32–3, 36.

11. Southside Professional Services operates out of 529 Broad Street in Providence. December 7, 2010 Tr. at p. 15.

12. The sign on the building where Southside Professional Services operates is adjacent to another sign advertising Immigration Law Offices operating in the same office suite. Attachment to Exhibit A, Memorandum from Joseph F. Parenteau to David D. Curtin and photograph appended to Estrada Complaint, Exhibit C.

13. Mr. Medina's business cards indicate that he is a "Legal Administrator/Translator" for Southside Professional Services. December 7, 2010 Tr. at pp. 32–3. See also, Exhibit C, Estrada Complaint

14. Mr. Medina described his function as a Legal Administrator as someone who "facilitates, handles or organizes whatever documentations legally that the attorney would need; whether it's research, whether it's filing papers at the courthouse, whether it's getting any type of testimony from a client, anything involving a client's file." December 7, 2010 Tr. at pp. 32–3.

15. Mr. Medina translated the Southside Professional Services adver-

tisement which ran in the Hispanic Yellow Pages as follows: "We count on the assistance of four attorneys that offer the services of immigration, criminal defense, Family Court, evictions, divorces, Workman's Comp. Insurance of home and auto, SR22 translations, modifications of loans, Notary Public and registration of automobiles." December 7, 2010 Tr. at pp. 22–3.

16. No attorneys work for Southside Professional Services, but Mr. Medina refers clients of Southside Professional Services to attorneys. December 7, 2010 Tr. at p. 15. February 2, 2011 Tr. at pp. 44, 46, 65.

17. Mr. Hernandez came to the Southside Professional Services offices seeking assistance with his divorce case. November 23, 2010 Tr. at pp. 6–8.

18. Mr. Medina accepted nine-hundred dollars ($900) in cash from Mr. Hernandez in connection with the Hernandez divorce. November 23, 2010 Tr. at pp. 11, 26–7, 30.

19. Mr. Medina arranged for Attorney DeSimone to represent Mr. Hernandez in his divorce case. December 7, 2010 Tr. at p. 10.

20. Mr. Medina gave Attorney DeSimone the nine-hundred dollars ($900) paid by Mr. Hernandez. December 7, 2010 Tr. at p. 12.

21. Mr. Hernandez only met Attorney DeSimone on one occasion in court. November 23, 2010 Tr. at pp. 16, 37.

22. Mr. Medina provided translation and paralegal work for Attorney DeSimone in connection with the Hernandez divorce. November 23, 2010 Tr. at pp. 12–4.

23. Attorney DeSimone paid Mr. Medina for his work on the Hernandez divorce. December 7, 2010 Tr. at p. 59.

24. Neither Attorney DeSimone nor Mr. Medina possess records reflecting payments made by Attorney DeSimone to Mr. Medina for work Mr. Medina performed on Attorney DeSimone's cases, though both admit that payments were made.[6] December 7, 2010 Tr. at pp. 59–60, 63, 89. February 2, 2011 Tr. at pp. 27–8, 38–9, 53–4, 69.

25. Attorney DeSimone withdrew his representation in the Hernandez divorce case on June 15, 2010, prior to its conclusion. November 23, 2010 Tr. at pp. 41, 44.

26. When Sara Correa met Mr. Medina at the Southside Professional Services office, she met with him alone and discussed her desire to file for divorce from her husband. December 16, 2010 Tr. at pp. 28–30.

27. Mr. Medina took information from Ms. Correa and quoted her a price

---

6. Attorney DeSimone was served with a subpoena by the Committee to produce certain documents relative to payments made by him to Mr. Medina. See, February 2, 2011 Transcript, Exhibit 17 attached thereto. Attorney DeSimone refused to produce said documents and stated that he did not intend to comply with the subpoena because in his opinion, the documents requested were not relevant to the proceedings before the Committee and were not public documents. See, February 2, 2011 Tr. at pp. 4–5. Although the Committee is not tasked with investigating the conduct of Attorney DeSimone and makes no findings with respect to Attorney DeSimone's conduct, the Committee was troubled by Attorney DeSimone's lack of candor towards the Committee as well as the business arrangement which exists between him and Mr. Medina. The Committee respectfully suggests that the Court may wish to refer the transcripts of this matter to Disciplinary Counsel for review in consideration of possible disciplinary action against Attorney DeSimone.

to procure a divorce for her. December 16, 2010 Tr. at p. 31.

28. Mr. Medina accepted payment from Ms. Correa in the amount of three-hundred twenty-five dollars ($325). December 16, 2010 Tr. at p. 35.

29. Ms. Correa believed that Mr. Medina was an attorney. December 16, 2010 Tr. at pp. 32, 54.

30. Ms. Correa filled out Family Court divorce paperwork with the assistance of Mr. Medina and Mr. Medina retained possession of the paperwork. December 16, 2010 Tr. at pp. 33, 45–7, 50–1.

31. Ms. Correa's divorce papers were never filed with the Rhode Island Family Court. December 16, 2010 Tr. at p. 39.

32. Ms. Correa never received her money back from Mr. Medina. December 16, 2010 Tr. at p. 55.

### III. *Recommendation*

In accordance with Rule 7(d) of the Rules of Procedure of the Unauthorized Practice of Law Committee, the members who were present at the hearing of this case voted to adopt the foregoing findings of fact. The Committee also found, by a preponderance of the evidence before it, that Mr. Medina and Southside Professional Services violated the statutes governing the unauthorized practice of law[7] as follows:

A. **RIGL § 11–27–1 "Hold himself or herself out" and "person" defined.**—(a) "Hold himself or herself out" as used in this chapter includes the following: the assumption, use, or advertisement of the title of lawyer, attorney, attorney at law, counselor, counselor at law, solicitor, or any term or terms conveying the idea that the person in connection with whose name they or any of them are used is competent, qualified, authorized, or entitled to practice law, or the use of any kind of sign, token, symbol, card, letterhead, envelope, stationery, circular, or other writing, printing, or painting, or any representation by word or act, the purpose or tendency of which is to convey that idea.

(b) "Person" when used in the phrase "another person" in this chapter, unless the context otherwise requires, includes partnerships, corporations, and associations.

The Committee finds that Mr. Medina and/or Southside Professional Services held him/itself out as authorized to practice law.

7. **§ 11–27–2 "Practice of law" defined.**—"Practice law" as used in this chapter means the doing of any act for another person usually done by attorneys at law in the course of their profession, and, without limiting the generality of the definitions in this section, includes the following: (1) The appearance or acting as the attorney, solicitor, or representative of another person before any court, referee, master, auditor, division, department, commission, board, judicial person, or body authorized or constituted by law to determine any question of law or fact or to exercise any judicial power, or the preparation of pleadings or other legal papers incident to any action or other proceeding of any kind before or to be brought before the court or other body; (2) The giving or tendering to another person for a consideration, direct or indirect, of any advice or counsel pertaining to a law question or a court action or judicial proceeding brought or to be brought; (3) The undertaking or acting as a representative or on behalf of another person to commence, settle, compromise, adjust, or dispose of any civil or criminal case or cause of action; (4) The preparation or drafting for another person of a will, codicil, corporation organization, amendment, or qualification papers, or any instrument which requires legal knowledge and capacity and is usually prepared by attorneys at law.

First, although Mr. Medina never operated under the name of "Medina and Associates," he testified that he had intended to and even went so far as to seek publication in the Yellow Pages under that name. Mr. Medina asserted that the listing for Medina and Associates under the "Lawyers" section of the Yellow Pages was a mistake, however the Committee found that this assertion was not adequately supported by the evidence. Mr. Medina himself, if he did not deliberately ask to be listed under the "Lawyers" section, was at best unclear as to the law-related nature of his business when he sought the listing. He also failed to ensure that the "Medina and Associates" listing was properly changed once the problematic listing came to his attention.

The Committee further finds that by advertising the ability to provide law-related services through the ad in the Hispanic Yellow Pages, Mr. Medina and Southside Professional Services deliberately held itself out as qualified to offer said services. Southside Professional Services did not actually employ any attorneys and yet offered services ranging from criminal defense to assistance with family court matters. This advertisement was misleading, inaccurate and violates RIGL§ 11–27–1.

In meeting with Ms. Correa when she inquired about obtaining a divorce, Mr. Medina deliberately created the impression that he was an attorney and could handle the matter for her. Mr. Medina advised Ms. Correa about what to expect from the proceedings and quoted her a price for handling the divorce. Ms. Correa testified that she believed Mr. Medina was an attorney when they met at his office. Ms. Correa was so convinced that Mr. Medina could help her, that she paid him three-hundred twenty-five dollars ($325) towards the cost of initiating her divorce proceedings with the Rhode Island Family Court. Mr. Medina accepted this payment on the pretense of providing legal assistance which he was not qualified or authorized to give.

B. **RIGL § 11–27–3 Receipt of fees as practice of law.**—(a) Except as provided in subsection (b), any person, partnership, corporation, or association that receives any fee or any part of a fee for the services performed by an attorney at law shall be deemed to be practicing law contrary to the provisions of this chapter.

(b) A lawyer or law firm may agree to share a statutory or tribunal-approved fee award, or a settlement in a matter eligible for such an award, with an organization that referred the matter to the lawyer or law firm if: (i) the organization is one that is not for profit; (ii) the organization is tax-exempt under federal law; (iii) the fee award or settlement is made in connection with a proceeding to advance one or more of the purposes by virtue of which the organization is tax-exempt; and (iv) the client consents in a written representation that a division of fees will be made.

Both Mr. Medina and Attorney DeSimone testified that Mr. Medina was paid for the various services he rendered on behalf of DeSimone's clients, including Mr. Hernandez.

The Committee is troubled by Southside Professional Service's business plan insofar as it is intended to profit from law-related services performed by non-attorneys. This type of business is violative of the foregoing statute which prohibits non-attorneys from profiting from the services performed by attorneys.

C. **RIGL § 11–27–8 Solicitation of business by agents prohibited.**—No person, partnership, corporation, or

association shall act in any manner or in any capacity as an agent for an attorney at law in the solicitation or procurement of any law business, and every contract for professional services secured by an attorney at law through the services of an agent shall be void.

This section shall not be deemed to apply to an organization, or its representatives, meeting the criteria contained in subsection 1 1–27–3(b).

Mr. Medina testified that the purpose of Southside Professional Services is to refer clients to attorneys with whom he had established relationships, depending upon what services a client needed. By establishing his office on Broad Street in Providence, which as Mr. Medina attested is a multi-cultural area, Mr. Medina sought to capitalize on an untapped market for legal services whereby he (Mr. Medina) would actively solicit clients in that community on behalf of attorneys and act as an intermediary between the clients and the attorney for the duration of the case. This arrangement is in direct contravention of the foregoing statute which prohibits any party from acting as an agent of an attorney in the solicitation or procurement of legal business.

D. **RIGL § 11–27–10 Agreement or offer to furnish legal services.—** No person or persons, except members of the bar, either in his, her or their own name or names or under any firm or trade name, shall furnish or agree to furnish legal advice, service or counsel, nor furnish or agree to furnish an attorney at law, nor advertise in any manner that he, she, or they will furnish or agree to furnish legal services or advice or the services of an attorney at law. This prohibition shall not be deemed to apply to an organiza-

tion, or its representatives, meeting the criteria contained in subsection 11–27–3(b). Nothing in this section shall be deemed to permit members of the bar to advertise contrary to the ethics of their profession.

Mr. Hernandez testified that Mr. Medina promised to procure an attorney to assist Mr. Hernandez with his divorce case then-pending in the Rhode Island Family Court. Indeed, Mr. Medina's testimony corroborated Mr. Hernandez' testimony: Mr. Medina admitted that he asked Attorney DeSimone to represent Mr. Hernandez and that he (Mr. Medina) forwarded Mr. Hernandez' payments to Attorney DeSimone.

As to Ms. Correa, Mr. Medina promised to furnish legal services, i.e., the procurement of a divorce, and accepted payment for such legal services, although no actual services were ever rendered.

On a global level, both the Southside Professional Services' advertisement in the Hispanic Yellow Pages and Mr. Medina's Southside Professional Services business cards are misleading and violative of the foregoing section of the Rhode Island General Laws. The advertisement promises the ability to provide very specific legal services, yet the company employs no attorneys. Furthermore, by claiming the designation of a "Legal Administrator," Mr. Medina, while not holding himself out as being a lawyer, is promoting the notion that he is in a position to handle legal cases or otherwise provide legal assistance.

IV. *Conclusion*

For all of the foregoing reasons, the Unauthorized Practice of Law Committee respectfully recommends that this matter be referred to the Department of Attorney

General for civil and criminal prosecution.[8]

8. In addition to the violations of the law practice statutes outlined above, Mr. Medina could also be prosecuted for retaining the monies paid to him by Ms. Correa.